**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**JANIS H.,**

                                                 **Plaintiff,**                                    **20-CV-1749Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                                                 **Defendant.**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**<u>DECISION AND ORDER</u>**

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #16.

**BACKGROUND**

Plaintiff applied for supplemental security income ("SSI"), with the Social

Security Administration ("SSA"), on December 18, 2017, alleging disability beginning

May 17, 2017, at the age of 49, due to bipolar disorder, panic disorder, severe anxiety

and a tic disorder. Dkt. #10, pp.73-74.

On November 6, 2019, plaintiff appeared with counsel and testified, along

with an impartial vocational expert ("VE"), Michael Smith, at an administrative hearing

before Administrative Law Judge ("ALJ"), Timothy McGuan. Dkt. #10, pp.42-72. Plaintiff testified thatshe completed a three week inpatient rehabilitation program in March of 2018. Dkt. #10, p.48. When she returned from inpatient rehabilitation, she began working as a cashier at NOCO to pay child support. Dkt. #10, p.49. She was promoted to assistant manager at NOCO, but was terminated because she did not get along with a new manager who reprimanded her for coming into the store after her shift and appearing tipsy. Dkt. #10, pp.50 & 62-63. She was hired at AMVETS in August of 2019, working more than 30 hours per week as a cashier. Dkt. #10, pp.50 & 55. She had missed 3-4 shifts at AMVETS because of her anxiety and depression. Dkt. #10, p.51. She wished she could work about 20 hours per week, but needed to make enough money to pay child support. Dkt. #10, p.61. She testified that she got along with her coworkers, but it was hard for her to be around a lot of people and that she would suffer panic attacks when the lines got long. Dkt. #10, pp.54-56. When she cycles with her bipolar disease, she becomes even more anxious and sometimes can't stop crying, which is embarrassing. Dkt. #10, pp.60-61. She is unable to attend AA meetings because there were too many people. Dkt. #10, p.59. She also testified that her work schedule made it difficult to continue mental health treatment, which impacted her ability to obtain her prescriptions. Dkt. #10, pp.52 & 57. She drinks "just a couple" to "take the edge off" her anxiety. Dkt. #10, p.59. Plaintiff lives with her ex-husband and friend. Dkt. #10, p.55. She does not drive. Dkt. #10, p.55. She has an associates degree in business administration. Dkt. #10, p.66.

The VE classified plaintiff's past work as a mortgage loan processor, which was a skilled position performed by plaintiff at the light exertional level. Dkt. #10,

pp.65-66. When asked to assume an individual with plaintiff's age, education and past work experience who could perform semi-skilled work that was thing oriented and only occasionally interact with the public, the VE testified that plaintiff could not perform her past work, but could work as a data examination clerk and mortgage accounting clerk, each of which were semi-skilled, sedentary exertion positions or as a plant care worker, which was a semi-skilled, medium exertion position. Dkt. #10, pp.67-68. The VE confirmed that each of these positions would have minimal contact with the public. Dkt. #10, pp.68-69. None of the positions would require more than occasional contact with co-workers. Dkt. #10. pp.70-71.  If plaintiff was limited to low stress positions, the VE testified that she could still perform the position of plant worker. Dkt. #10, p.70. She would not be able to retain employment if she was absent two days a month on an ongoing basis. Dkt. #10, p.71.

The ALJ rendered a decision that plaintiff was not disabled on January 16, 2020. Dkt. #10, pp.24-36. The Appeals Council denied review on October 2, 2020. Dkt. #10, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on December 1, 2020. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has

sufficient Residual Functional Capacity ("RFC"),  for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity between the alleged onset date of May 17, 2017 and September 30, 2018; (2) plaintiff's bipolar disorder and alcohol abuse disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform work at any exertional level with the following limitations: occasional interaction with the public and no more than semi-skilled work that is things oriented; and (5) plaintiff was not capable of performing her past work, but was capable of working as a plant care worker, which is a semi-skilled, medium exertion position or as a data examination clerk or mortgage account clerk, both of which are semi-skilled, sedentary exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #10, pp.26-36.

Plaintiff argues that the ALJ misrepresented and improperly cherry-picked evidence from the record. Dkt. #12, pp.12-15.  Plaintiff further argues that the ALJ improperly inferred a lack of limitations from the absence of restrictions contained within

the treatment records. Dkt. #12, pp.15-17. Finally, plaintiff argues that the ALJ failed to recognize that her alcohol use was a coping mechanism for her mental health symptoms and improperly cited plaintiff's noncompliance with treatment without considering that such behavior was commonplace for bipolar disorder. Dkt. #12, pp.16-17.

The Commissioner responds that the ALJ fully considered the evidence of record and properly relied upon the opinion of the consultative psychologist to determine that plaintiff was capable of substantial gainful employment. Dkt. #14-1, pp.4-11.

The ALJ properly considered the evidence of record in assessing plaintiff's RFC, which is supported by substantial evidence. The ALJ acknowledged plaintiff's symptoms of mood swings, anxiety and depression, as well as her use of alcohol to manage anxiety. Dkt. #10, p.31. However, the ALJ correctly recognized that psychiatric medication had stabilized plaintiff's mood and alleviated her symptoms of depression. Dkt. 10, p.31. Plaintiff was prescribed psychiatric medication on November 20, 2017 and reported to her counselor on December 8, 2017 that her medication was "regulating her mood very effectively" and that she was "no longer experiencing extreme mood states." Dkt. #10, pp.274, 329 & 362. Plaintiff also reported to her prescribing physician on December 20, 2017 that her "mood has been more stable and she is no longer feeling depressed and denies having any hypomanic symptoms." Dkt. #10, p.332. On January 13, 2018, plaintiff similarly reported to the consulting psychologist,

Christine Ransom, Ph.D., that her "bipolar disorder is currently in remission on medication and with counseling." Dkt. #10, p.280. Plaintiff continued to report mood stability with medication on February 2, 2018 and October 9, 2018. Dkt. #10, pp.336 & 341. While plaintiff did report increased symptoms of increased energy and impulsivity on January 9, 2019, which is outside of the relevant time period because plaintiff was earning above the substantial gainful activity threshold at this time, her blood work revealed that the level of mood stabilizer was low, prompting an increase in plaintiff's prescription. Dkt. #10, p.345.

The ALJ acknowledged that plaintiff continued to experience symptoms of anxiety, including episodic panic attacks, which exacerbated her tics. Dkt. #10, pp.32-33. While recognizing evidence of plaintiff's involuntary gasps and coughs in the record, and noting that such tics can increase with stress, the ALJ properly determined that the evidence did not suggest that this condition, which plaintiff had experienced throughout her life, limited her ability to perform work activity and was not, therefore, a severe impairment in and of itself. Dkt. #10, p.27; See Dkt. #10, p.329. The ALJ also noted that the tics stopped when she was prescribed a low dose of benzodiazepines while she was in inpatient rehabilitation, but plaintiff could not continue this prescription because she had resumed drinking. Dkt. #10, p.339. Although plaintiff reported that the tic was "still there, when anxious," it was not noticed during examination on October 9, 2018 and was "not evident in session" on January 9, 2019, "until the end of session when she began talking about it." Dkt. #10, pp.339 & 345.

Contrary to plaintiff's argument, the ALJ specifically referenced treatment records observing anxious mood and acknowledged plaintiff's reports of panic attacks, particularly in crowded places and around strangers. Dkt. #10, pp.31-32. As plaintiff notes, on October 13, 2017, plaintiff was excused from group therapy after being found outside the group room "overcome by anxiety." Dkt. #10, p.367. However, this incident was prior to plaintiff's initial psychiatric assessment on November 20, 2017, during which she was prescribed psychiatric medication which, as set forth above, significantly improved her symptoms. In any event, the ALJ did note that plaintiff reported on January 4, 2018 that she was unable to return to group therapy because her anxiety would be unbearable in a group setting. Dkt. #10, pp.33 & 262.

Shortly thereafter, at her consultative psychiatric examination with Dr. Ransom on January 13, 2018, plaintiff denied ongoing clinical level depression, generalized anxiety and manic symptoms, but reported experiencing episodic panic attacks, especially in crowded places and around strangers, making it difficult to go to the grocery store or shop. Dkt. #10, p.280. Dr. Ransom observed plaintiff to be "cooperative and socially appropriate," with a "mildly tense affect" and diagnosed plaintiff with "panic disorder, currently mild and episodic." Dkt. #10, p.283. Based upon her evaluation, Dr. Ransom opined that plaintiff would have "mild episodic difficulty understanding, remembering and applying complex directions and instructions, regulating emotions, controlling behavior and maintaining well-being," but would

> show no evidence of limitation understanding, remembering and applying
> simple directions and instructions, using reason and judgment to make
> work-related decisions, interacting adequately with supervisors, coworkers
> and the public, sustaining concentration and performing tasks at a

consistent pace, sustaining an ordinary routine and regular attendance at work, maintaining personal hygiene and appropriate attire and being aware of normal hazards and taking appropriate precautions.

Dkt. #10, pp.282-283. Dr. Ransom concluded that the results of plaintiff's evaluation were consistent with a psychiatric condition of a mild nature that would not significantly interfere with the plaintiff's ability to function on a daily basis. Dkt. #10, p.283. The ALJ found Dr. Ransom's opinion persuasive because it was supported by observations upon examination of plaintiff and supported by the record. Dkt. #10, p.34.

Subsequent to the consultative examination, plaintiff completed inpatient treatment and reported reduced anxiety and willingness to start group therapy sessions. Dkt. #10, p.348. Plaintiff was able to commence employment following her inpatient rehabilitation, reporting to her psychiatrist on October 9, 2018 that "she loves her job;" was "feeling more productive and has been offered an assistant manager position after just three months" and that her "[e]nergy and motivation has been good." Dkt. #10, p.339. While plaintiff reported intermittent but severe and worsening symptoms of anxiety to her primary care physician on September 5, 2018, it was noted that she had run out of her prescription medication. Dkt. #10, p.418.

Thus, contrary to plaintiff's argument, the Court finds that the the ALJ appropriately considered "all of the relevant medical and other evidence" in determining plaintiff's RFC, *See Blash v. Comm'r of Soc. Sec'y*, 813 Fed. App'x 642, 644 (2d Cir. 2020), *quoting* 20 C.F.R. § 404.1545(a)(3), and that his determination that plaintiff was capable of performing semi-skilled work that is things oriented, with no more than

occasional interaction with the public, is supported by substantial evidence. *See Robin P. v. Comm'r of Soc. Sec'y*, 2022 WL 593612, at *10 (N.D.N.Y. Feb. 28, 2022) (ALJ's assessment of plaintiff's mental limitations supported by substantial evidence where ALJ "cited the contrary evidence, but also pointed towards treatment records, [p]laintiff's reports of her own daily activities, and expert opinion that supported a finding of fewer limitations than [p]laintiff claimed.").

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #12), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #14), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
               **June 17, 2022**

                                    s/ H. Kenneth Schroeder, Jr.
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**

-10-